Good morning. My name is Catherine Bennett, and I represent Western Oilfields Supply Company, which does business as Rain for Rent. Rain for Rent respectfully requests that this court reverse the judgment below and remand for a new trial. We raised five different appellate issues in our brief, and we're going to go through them one at a time. But given the limited amount of time, I think we probably should talk about the three different issues we raised that constituted reversible error by the trial court. First, the trial court failed to grapple with the doctrine of promissory estoppel. And in its failure, the court misinstructed the jury. Pardon me. Yes. Failed to grapple is a metaphor. Why don't you tell me what the judge did wrong? Absolutely. The judge failed to recognize that California law and, in fact, the restatement of contracts presumes that there is no consideration in promissory estoppel, that promissory estoppel is a consideration substitute. And so the trial court sent the jury out with instructions on breach of contract and instructions on promissory estoppel that could allow it to see the same promises that created a contract as also creating promissory estoppel, which is not true. And the order of the questioning backed that up in a way, and there was no objection. Right? The interrogatories. I'm sorry. I don't understand. Well, the way the first question was, was there a written contract, right? Correct. Then the second question dealt with whether there was a condition precedent, right? Correct. And there was no objection to that? No. There was no objection to the interrogatories on with respect to the verdict form. There were objections to the jury instructions. Okay. I'm seeing. But there were no objections to the jury interrogatories? No. Pardon me. The jury interrogatories asked the usual questions for breach of contract and then separately asked the questions for promissory estoppel. But the instructions themselves did not distinguish between promises that are supported by consideration and promises that are not supported by consideration. Was there the instruction on the written contract, which was part written and part oral, was that, did that instruction require a finding of consideration? Yes, it did. All right. The instruction on promissory estoppel did not require a finding of consideration, correct? Correct. Your objection is that the promissory, that the promissory instruction, the estoppel instruction, should say, in addition to not requiring consideration, that it say we require you to find no consideration. Correct. Did you propose that instruction? Yes, we did. In the Rule 51 pre-instruction hearing?  And it was denied, right? And it was denied. So the only question we have is whether the failure to rule out consideration as an element of promissory estoppel is a misleading instruction under California law when the instruction itself does not require consideration, right? The instruction is a misleading instruction under California law. But the promissory estoppel instruction does not require consideration to be found by the jury, as opposed to consideration being required in the, pardon  I apologize, Your Honor. As opposed to the instruction for contract, which does require consideration. So if you were to take a look at both of these, you'd say, wait a minute, over here in the instruction on contract, they require consideration. Promissory estoppel, they don't require consideration. What you're saying is that's not enough. You've got to tell them you've got to find no consideration. Is that what you're saying? That's what I'm saying, Your Honor. Exactly. Do you have a case that says that? Well, and therein lies the problem. Not necessarily our problem, your problem. Therein is the problem. The cases are very clear that promissory estoppel presumes no consideration. That's the only time it's applied. The California Supreme Court in, let's see, which one was it? C&K Engineering v. Amber Steele indicated that it's not a jury question. Promissory estoppel is an equitable doctrine, and it should be handled by the trial judge, not be given to the jury. So there is no California instruction on promissory estoppel. The parties here fashioned instructions based on the case law. So you think it was an error to submit promissory estoppel in any way, shape or form, regardless of the instruction, because it would be like submitting an issue of divorce law to the jury. You don't have a jury in divorce law, and you should have promissory estoppel determined by the chancellor and not by a jury. Is that right? Well, certainly that is one point. Did you object to that in the trial court? Did you say, Judge, you can't instruct this jury on promissory estoppel in any way, shape or form, because this is an equitable doctrine and you've got to decide it yourself. So let's take it that way. Did you ever do that? No. No. Okay. That was not. You submitted, indeed, an instruction on promissory estoppel with an additional element, which he didn't give, right? Correct. And the -- Do you think that's a waiver? No. It's not a waiver. We submitted an instruction and explained to the Court that we needed to be able to distinguish between promissory estoppel and contract. Now, the judge, in all likelihood, should have taken it from the jury, but that's   We didn't. We didn't. We didn't instruct him to. That absolutely is correct. Number one. Two, did you make a judgment, did you make a motion of judgment notwithstanding the verdict on the incorrectness of promissory estoppel being submitted to the jury? No. That was not done. So the problem here is that the Court misinstructed the jury. The Court probably shouldn't have given it to the jury, but as I indicated, we did not ask the Court to not give it to the jury. But when the Court gave it to the jury, it gave it – it gave the jury misleading instructions. Now, there is case law. Let me ask you a question. Certainly. Do you have any cases, Ms. Bennett, which say that where the elements of a cause of action do not include a certain element here of consideration? It is erroneous to instruct the jury without telling the jury that that element is not included. Or is it sufficient to instruct the jury as to the other elements and simply not instruct them as to that element? Is omission the commission of instructional error? I don't have a case directly on point, Your Honor. So. But it's – but when you combine two instructions that could reasonably lead the same facts, lead a jury to conclude that the same facts find – can be used to find both causes of action, a breach of contract or a promissory estoppel, it seems reasonable that the whole of the instructions need to be clear to the jury so that they understand that there's a difference between the two. And – I don't mean to tell you how to do your argument. I think you've informed us pretty well on this. Okay. Do you want to go to the next point? Certainly. The second point that – where the trial court committed error was in allowing improper expert testimony by Mr. Goodwin. Mr. Goodwin is a farmer and a rancher. 45 years. Yes. But he did not designate himself as an expert witness. He – Was there a court order in advance of the trial that the names and qualifications of expert witnesses should be exchanged between the parties? Yes. And the parties did do an exchange, and neither party designated experts. And when he testified – by the way, what was the opinion as to which he testified? His opinion was extrapolating his prior experience on another ranch. No, no, no. That was his qualifications. What was his opinion? What did he say? In my opinion – Oh. His – his opinion was how much he'd lost, 80 or 90 percent of his crop. Because he got to plant it in July instead of in May, right? No. He planted it in May, but he couldn't water it. Couldn't water it until July, right? Correct. Okay. So he says, I lost 95 percent of my crop. And why is that an opinion when it's a farmer who goes out and takes a look at the ground? Because – And sees what sprouts and what doesn't sprout. Because how much you would expect to get on particular land and irrigated with particular – and planted with particular seeds requires expert opinion. Did you object to it on that ground at the time? Yes. And what was the court's order and reason therefore? The court – the court did not address the expert opinion issue. The expert opinion issue was that Mr. Goodwin had 40-some-odd years of experience and he was a farmer and rancher. And so the court thought that he was qualified. But in any event, it was lay opinion. So your objection is that the expert opinion was in violation of the course pretrial order?  All right. And it's – and I would add one thing to that, and that is that it is prejudicial error because that was the only evidence about damages that Mr. Goodwin introduced. Pro ar con. Excuse me? Pro ar con. No evidence to contradict it either. Correct. And Rain for Rent did not have an expert present to deal with that because no experts were designated. It was not expecting expert testimony in that regard. And finally, the court improperly directed – entered a directed verdict for Flora Goodwin when there was evidence to support a verdict that she was a partner in the She indicated that she did business as part of that. Why is that material error here? There wasn't a verdict by the jury against Mr. Goodwin. And so if there was one against Mr. Goodwin, how were you hurt by getting a directed verdict against you by Mrs. Goodwin? Well, I think – I think the main issue, if you look at it from that perspective, is that we were not allowed to introduce the evidence of her admissions. We were also then not allowed to argue because she was out of the case and the judge had ruled he wouldn't deal with the partnership issues. But her admission would be against her. Correct. But – Do you really think that there was a possibility that the jury found for Mr. Goodwin and that the contract hadn't been completed because the condition precedent hadn't been effected, but they could find for you and against Mrs. Goodwin because the condition precedent had been met and the contract hadn't been broken? Well, that's an interesting question, Your Honor. Because we don't know what the condition precedent was. And that was one of the other issues. The precedent is very simple. The condition precedent is put in the sprinkling system in order so that the hay will grow. Except that the jury also concluded that rain for rent had done everything required under the contract. They were required to put it in so that the seed would grow that year, right? I mean, it's not very good putting sprinkling in July. Rain for rent contends that there wasn't a time limit on when this was supposed to be done. But even presuming that Mr. Goodwin is correct about the time limit on when this was supposed to be done, that – that may be true, except that there's a problem with that verdict. The jury – Isn't that how you got the $400,000, by promising? How we got – How you got him to sign the note by promising that it would be finished in 10 days, two weeks? Well, Your Honor, that's at one point. Okay? If we look just at Mr. Goodwin's testimony in this regard, at one point he testifies that that was always the deal. May 1 was always the deal, that that was agreed before he even contracted with rain for rent, that that was part of the original negotiation. Ms. Bennett, does it make sense to you to have a farmer buy a sprinkler system and say, I want a crop this year, but don't worry about it. You can put in a sprinkler system any time of the year. Your Honor? It can't be, right? None of this necessarily makes a great deal of sense to me. You're fighting the facts, right? Yes. And what we have – the position that we've taken on this appeal is let's accept Jerry Goodwin's version of the facts. And that's where I'm headed with this. One time he says it was decided before we even entered into the agreement. Another time he says sometime in April, Mr. Hilton, who was our salesperson, said, yeah, we're going to get it done for you, but, hey, I need this $404,000. Well, our contention is that's further assurances under the contract. If you say it was a May 1 date, Mr. Hilton gave you further assurances, but he also asked you to pay the $404,000, which you claim you didn't owe, until it was fully installed. So there's consideration throughout what Mr. Goodwin testifies. What he's testifying to is a contract. He's not testifying to promissory estoppel. He's not talking about gratuitous. Do you want to spend some time to do a rebuttal? Yes, I do. Thank you, Your Honor. Just to finish my sentence, he's not testifying about gratuitous promises. They're all supported by consideration. All right. Thank you very much. We'll hear from Mr. Goodwin. Did you try the case, counsel? Yes, Your Honor, I did. What's your name? It doesn't appear on the day sheet. I'm sorry. Steven Quessenberry. I thought I'd start with, first of all, the issue of Flora Goodwin, just because counsel raised that as one of her three points. I want to point out, one of the things she said is they were somehow prohibited or held back at trial by the virtue of the judge's decision. The record shows that Flora Goodwin did testify, was subject to, in fact, they called  her as an adverse witness and cross-examined her. Yes, they did. They did call her. Second point, which I think the Court has raised, that if the Court does uphold the jury's verdict, and I don't mean to be presumptuous in that, then this would be a moot point anyway. There is no possible way that the Court could find.  I don't know, Your Honor. When you read the testimony, I don't know. I couldn't say. I mean, is she independently wealthy? Never mind. Never mind. It has nothing to do with this case. I think as an attorney, with all due respect to trial counsel, you know, you want to hold everybody in a case as long as you can, you know. I don't blame them for that. But there's only two ways that can hold her liable.  she didn't. I mean, she didn't. She didn't sign anything. She never talked to anybody. She had zero interaction. Her only interaction with anybody from Rainfront ever, she had a conversation with their salesman about their families. That's what the record shows. Even when they, I don't know if you, it's Exhibit 81 from the trial. Their UCC filing, which Rainfront prepared, it lists Jerry Goodwin on there, not Flora Goodwin. There's no question that she wasn't looked at as a principal in this transaction. So then they say, well, she's a partner. She's a partner in this business. It's a partnership. You know, that's not an unlimited standard. The law says she basically has to, you know, participate in the business, a significant participation. They didn't ask her those questions. Not if she's a general partner. Well, she has to. Under court law, she was joint in several liability. Under contract law, well, she's still, you have to prove she is a partner. You have to show she's a partner. Was there any proof that there was a partnership agreement between she and her husband? No, no, no. In fact, her testimony, I was just looking at this a second ago, she says things like, you know, this is all that's in the record. I don't do the business. I have nothing to do with it. Jerry at one point says she's my wife, my partner, like my life partner, and somehow they're construing that into a business partner. There is, there has to be. She could sign checks. Sure. It's like office help. Office help is important. And her name was on the letterhead. Her name appeared on a letterhead. And that's it. That's it. And she signed some checks. I mean, I don't know. It seems like, and also the standard to reverse that, you have to show there was substantial error. I don't believe there was any error at all in dismissing her. But I don't know that that's a main issue, but I wanted to bring that up. His testimony, the improper expert testimony, as it's called, what Jerry Goodwin testified to was facts. You know, he had this barger ranch in the same county. You know, I don't know if you get an idea. He testified to an estimate. His estimate was that he got only 5% or 10% yield on his crop because he didn't have any water. Yeah. These ranches are, I mean, it's 365,000 acres. That's how big Big Springs Ranch is. So the next ranch over is Barger Ranch, where he had two crops two years before. And he says, yeah, I did this. I planted my seed. This is what happened. This is my yield. I planted the exact same seed here. In fact, even if you look at Skip Hilton's testimony, he was the consultant on Barger Ranch, the same company, or the one who consulted with him on that irrigation equipment, which was nearly identical to this equipment. It's like a man who's been injured in an automobile accident. They ask him to estimate how many days he lost of work. He says a month. That's expert testimony. I don't think so. That's his fact testimony. You read, he's been there 45 years, raised on a farm. He's a farmer-rancher. He knows. He can look at it and say, wow, 80% to 90% of my crop came up or didn't come up. This is just facts. And from there, it's math. It's just math. It's algebra. It's simple math. Math that my 11-year-old son learned. Let me ask you this. Do you agree with your learned friend, Ms. Bennett, that there was a court order requiring the naming of expert witnesses in advance of trial? I agree. Yes, to retain expert witnesses. Secondly, you didn't name Jerry Goodwin. No, because he was never intended to testify. Third, when Goodwin was about to give his testimony regarding the amount of crop that he'd lost, was there an objection on grounds that that was stating an opinion and he was not an expert witness and he hadn't been named in the pretrial order? There was. I'd have to look specifically at the words, but there was an objection. I remember he did lodge an objection at that time. I don't know when it was in the context of the testimony, but then he never objected again. Did the judge make a finding that this was not expert opinion? Yes. It was lay opinion? That's what he said. He says he just talked. I think he said something like, he's farmed for 45 years. You'll see it in there. He was a little exasperated. Because he wasn't saying, well, in my opinion, if you go over to Idaho and you farm over there, this is what you might. No, he says, this is what we did. This is how much of my crop came up. And had that crop came up, I would have made this much money. So the judge made a finding that this was not expert opinion or expert testimony. This was some variation of lay opinion or factual opinion. First of all, I don't want to mislead the court because I don't know the specific answer to that. I do want to point out one other related thing to this. Can you give us a citation to the record where this objection and ruling was made, please? Yes. And let me point out, this is another interesting thing that I just found this morning. You know, Mr. Goodwin was called by Western oil fields. They called him. And they elicited testimony about all this farming. They started this whole thing. That is at page 318 and 319 of the trial record. And I just want to point this out. Where did they elicit? I'll read you the testimony. So this is on Wednesday. This is the first time Mr. Goodwin is called by them. And they say, sir, speaking to Mr. Goodwin, this is on page 318, line 20. You had indicated that you planted the crop despite the fact you knew there was no water available to irrigate, correct? Yes, I did. In law school, they always taught me, never start a question with why on a cross-examination. But they say, why did you do that if you knew there was no water available to irrigate your crop? And then he starts talking about all this. Answer, on page 319. The pivots were up, and Skip assured me that I could go ahead and plant the crops because what little was left to be done, he said he could get done in a short time. He'd bring in a full crew. He reassured me. He said, get the crops planted. Now, sir, you're not usually involved in the process of purchasing seeds to raise crop, are you? I've done quite a lot of that in my life. The way you decided what type of crop you were going to plant was that by talking to people, yes, and taking soils. They're asking about all this stuff that later on they object and say, oh, this is expert testimony. But let me find that part you were looking for. Okay. Here we go. Okay. This, okay, I'm on page 467 here because I think this is where it comes up. Okay. Yeah. On page 473, I believe this is the first objection. My question on page 473, tell the jury about the process for how you go about testing soil, fertilizing soil, dealing with the hay crop. Take us through a one-year cycle at the Barger Ranch. Objection from trial counsel, calls for improper lay witness testimony and lacks foundation. Counsel, that's not the testimony that Ms. Bennett is objecting to. Ms. Bennett is objecting to, I think it's on page 548. Oh. 22. Okay. In rough figures, can you just, you know, tell the jury how much of your crop you got? You know, looking out there, how much it was growing? I see. You know, 50%. Okay. Mr. Scanlon, objection, Your Honor, calls for expert number. Now, at that point, I don't see anything about the objection being that this is an unnamed expert in violation of the trial court pretrial order. But we'll put that to one side. Mr. Quesenberry, I'm just asking for his lay opinion as to how, what percentage was there? The court, the objection is overruled. Right. He can see how much of the dot, dot, dot. The witness, we know how much. Using the basis of four ton, I guess that's four ton an acre, 85% of the crop died. That's what he said, 85% of the crop died. Right. All right? And also, if you look at the question before, too, he says, I say, looking out, you know, how much was growing. I mean, you know, it's talking about the five senses here. Yeah. Okay. So the ruling here is, was the judge guilty of prejudicial error in characterizing this evidence as lay opinion? Yeah. And I don't see where they ever raised that at trial. Well, they said it calls for an expert number. Yeah. What were they, the issue about was he identified as an expert and all this kind of stuff is never raised. Well, there was no calling out of the specific pretrial order, but there was an objection that this testimony called for expert number. I suppose a properly phrased objection would be this testimony calls for an opinion which cannot be given other than by an expert who must be named before trial in accordance with the pretrial order. But all those things were not said by Mr. Scanlon. That's true. And, you know, it is a discretionary thing, and the judge, and it's a little ambiguous, you know. Okay. And it calls for an expert number. Now, do you want to go to the instructional error? Yes. In fact, you know, in listening to the colloquium that you had just now with counsel, you know, the law on promissory estoppel is very old and very clear, and there's four elements. It comes right out of the restatement. The law for contracts is equally clear. They wanted an instruction that added this sort of proven negative thing. You have to show that there was no consideration. First of all, I'm not sure that that would have even been a correct instruction because under promissory estoppel, the person's reliance, that solely is the consideration. Your reliance on that promise is the consideration. It's implicit in the elements. If you meet those elements, there's a promise, you rely on it, your reliance was reasonable and foreseeable, and you've met the elements. Those are the elements that haven't changed. Well, they say this case is tricky because you have this contract and all this business. Well, they had a lot of other instructions that they could have gone to the judge. And it's a big problem I have with this whole case. It's things being raised for the first time on appeal. They say, well, the difference between breach of contract and promissory estoppel Well, let's put it this way. Under Rule 51, unless you explicitly raise an objection to instruction or tender another instruction, which is refused, we approach the case under the clear error rule. Now, are you saying that no proper objection was raised to the promissory estoppel instruction? That's right. I'm saying they said, here's our extra element, and that was rejected, and they duly recorded their objection to the nonacceptance of their instruction and to our instruction. But if they have some other thing they want instructed, they should have proposed it right then to the judge. Well, they did propose it. They proposed an instruction with a fifth element, I guess. A fifth element. And that was rejected. As opposed to all the others. Now, the question is, was that an error of law? But it's not under clear error statute. We review that de novo to see if it is material or harmless error, correct? Correct. And it's not erroneous in any way, shape or form. The instruction that was accepted is exactly the law. It is never – like you said, there's not one case that adds this element. There is no case like this. You know, they come and they say – Is there any case that you're – of which you're aware that the failure to instruct that consideration is not an element of promissory estoppel is prejudicial error? Absolutely not. I'm not aware of any case like that. I guess I asked that of Ms. Bennett. She's not aware of one either. Yeah. This, you know, this thing about submitting promissory estoppels to the jury, you know, this is – it reminds – it's kind of a metaphor for this whole appeal. Never raised to the trial judge. Never raised after the trial to the trial judge to say, hey, look, we think there was a problem here. They submitted – The jury was never asked the question either. The jury was never asked the question. They submitted promissory estoppel jury instructions. They didn't object to the verdict form. They, you know, participated in drafting the verdict form. It wasn't even briefed. Their question could have been resolved by a simple question to the jury, right? That could have been. Absolutely. They could have added an additional – could have been part of the verdict form. You know, it would have been fine with me. So it's just we're raising it way too late. You take these issues back to the trial judge. You can do things, you know, at trial and not for the first time on appeal. Lastly, I just wanted to point out this. We submitted this Rule 28J letter. Is the Court aware of this case that came out? And it's actually a really good case kind of on the stacks of what is consideration and what is not. You know, if you have an original contract back here and things happen and you have a promissory estoppel situation back here, the cases are all very similar. The person who's trying to fight the promissory estoppel says, well, it was part of our original contract. And the person who's trying to defend the promissory estoppel says, no, no, it's separate. This case is really good. It's very similar to our case. You had a loan. This is the Wolf case. You had a loan with all the documents, promissory note, trustee made way back here. Years later, there's a foreclosure going on down here, and the bank allegedly tells the plaintiff, you know what? While we're talking, we're going to forbear. I think they said the clock stops and we're not going to do anything. And then they go ahead and foreclose. So she sues him, among other things, for promissory estoppel. The bank says, oh, no, this all arises out of our deal here. But the court says, no, no, no, this is something that happened later on. Very similar to our case where we did have all this agreement back in April or whenever of 06, May 1st of 07. Now, later, literally when they've missed their deadline, Jerry says, what should I do? Should I go plant my seed? You go ahead and plant your seed. We promise we'll do all this stuff. You go ahead and plant. That's our promise. On condition you give us $404,000 ahead of time. You know, if you look at the testimony, I don't think that's how it went. I mean, he's extremely clear. In fact, I'm running out of time here. You know, page 339 of the record, question, come May 1st or not, operationally testified, answer, no, they're not. Why did you go ahead and plant your seed as opposed to waiting until they were operational? And do you specifically have a conversation with Skip Hilton after the May 1st deadline, many, that you relied on in planting the seeds and moving forward? Yes, I did. He's unequivocal about the May 1st. Now, his testimony is that back here in April of 06, they said they would get him in by May 1st. That's not the promissory stuff that we're talking about. The problem is when May 1st comes and they're not in, he goes to them and says, hey, they're not in, what am I going to do? And they say, you know what, you go ahead and plant your seed, we're going to do all this stuff, and you'll be okay. And he relied on that promise to his detriment, and he was damaged. So that's all I have. Thank you very much. Thank you very much. Ms. Bennett, you had a little bit of time. Thank you. I want to start with the Wolfe v. Wells Fargo that was in the Rule 28J letter and that Mr. Quisenberry brought up. He indicated that the court there said, no, the promise, the promises that the woman allegedly detrimentally relied on occurred later on. That's not what happened. The court indicated the problem was the promise she was talking about was the promise to stop the clock on the foreclosure, and that promise didn't relate to the performance under the loan agreement. And so that was the distinction that the court was willing to make at that point, which was on a motion to strike, motion to dismiss. That it appeared that she was stating facts sufficient to constitute a cause of action under promissory estoppel because that promise did not relate to the performance of the loan agreement, that is, to stop the clock. So actually, that case is consistent with other California cases on promissory estoppel. The issue is not when the promises occurred, but whether they relate to the subject matter of the contract and the performance of the contract. And that's the problem that presents itself here. It was always understood that Rain for Rent was going to install this equipment. And looking solely at what Mr. Goodwin says, it was always going to install it as of May 1st. He says that was part of the original deal. So any promises regarding that just relate back to the contract. This isn't a promissory estoppel case. Kennedy. When did he pay the $404,000, before May 1st or after May 1st? Before, in April. May 1st? On the partnership issue, just a point of clarification, there's no requirement under California law for a written partnership agreement. All the parties have to do is appear to operate as a partnership. I'm sorry to tell you you've exhausted your time. Thank you very much, Your Honor. Ladies and gentlemen, the case of Western Oilfields v. Goodwin will be submitted. And this Court thanks counsel for their good arguments. And the Court will stand adjourned until tomorrow. Well, tomorrow morning we'll be in Stanford anyway, but until Friday morning.
judges: Walter, Noonan, Bea